UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Kadi Kamara,

                  Plaintiff,           CV-03-0337 (CPS)

    - against -              MEMORANDUM OPINION
                                  AND ORDER
City of New York and New York City
Police Officer Louis Camello,

                  Defendants.

----------------------------------------X

SIFTON, Senior Judge.


     Plaintiff Kadi Kamara ("Kamara") brings this action pursuant
to 42 U.S.C. § 1983 against the City of New York (the "City") and
New York City Police Officer Louis Camello ("Detective Camello")
alleging violation of her constitutional and common law rights.
Specifically, plaintiff Kamara alleges that she was falsely
arrested when a search warrant was executed upon her residence at
225 Park Hill Avenue, Apartment 6G, Staten Island, New York.  She
states claims for relief pursuant to 42 U.S.C. §1983 for false
arrest and conspiracy to deprive her of her constitutional rights
against Detective Camello, and she asserts municipal liability
under §1983.  She also alleges common law claims for intentional
infliction of emotional distress and false arrest against
Detective Camello and negligent hiring and supervision against
the City.

     The defendants now move for summary judgment with respect to

all claims against them pursuant to Rule 56 of the Federal Rules
of Civil Procedure on the grounds that (1) plaintiff has failed
to establish municipal liability under 42 U.S.C. § 1983, (2)
probable cause existed for plaintiff's arrest, (3) defendant
Detective Camello is entitled to qualified immunity, (4)
plaintiff's claim of conspiracy against Detective Camello fails
as a matter of law, and (5) plaintiff's state law claims fail as
a matter of law.  For the reasons stated herein, the motion for
summary judgment is granted in part and denied in part.

## BACKGROUND

The following facts are drawn from the parties pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the submissions in connection with the present
motion.  Factual disputes are noted.

Detective Louis Camello, during all relevant times, was
employed as a detective with the New York City Police Department,
and assigned to the Staten Island Gang Division.  Plaintiff Kadi
Kamara, a naturalized United States citizen and native of
Liberia, during all relevant times resided at 225 Parkhill
Avenue, Apartment 6G, Staten Island, New York with her infant
son.  No other adult lived with plaintiff in that apartment.

Prior to June 13, 2002, Detective Camello was conducting a
five month investigation of identity theft in the Park Hill
Apartment Complex ("Park Hill") under the supervision of

Assistant District Attorney David Frey.  The investigation revealed that individuals in Park Hill were applying for credit cards without prior authorization or knowledge of the person to be named on the card, and thereafter either changing the names on cards issued or adding themselves as additional card holders. Those fraudulent cards were sent to addresses other than those of the named card holders and were then used to purchase merchandise.  Detective Camello states that he obtained evidence of the Park Hill identity theft scheme from a variety of sources, including the execution of search warrants, prior arrests, a confidential informant, and merchandisers such as AOL.com and Amazon.com.

Defendant Camello states that during his investigation, and prior to June 13, 2002, he obtained evidence through a confidential informant that plaintiff was receiving fraudulent credit cards at her apartment on behalf of an individual named Tiffany Roberts.  Detective Camello also states that he obtained evidence from Amazon.com that a credit card under the name Diane Leslie was used to purchase merchandise for shipment to 225 Park Hill Avenue, Apartment 6G in the names of Tiffany Roberts and Jasmine Frilando, and that he learned that UPS was delivering packages to plaintiff's apartment.  Plaintiff disputes that Detective Camello had this information before he arrested plaintiff.

Both sides agree that in December 2001, six months before she was arrested, plaintiff received credit cards by mail that she had not asked for or authorized.  An individual whom plaintiff claims she did not know at the time approached plaintiff and threatened to physically assault her if she did not turn over the cards.  Plaintiff called the police to report this incident; however, the police did not pursue an investigation. Shortly thereafter, plaintiff became aware of the fact that an unauthorized charge had been made to her credit card account. She immediately called her credit card company, and the company reversed the charge.  Plaintiff also claims that she received a package that she did not order, and that she immediately took it to the Park Hill security office.

As part of Detective Camello's identity theft investigation, the Richmond County District Attorney's Office applied for, and on June 6, 2002 was granted, approximately twenty search warrants.  A June 3, 2002 memo from the Commander of the Staten Island Gang Squad indicates that the purpose of obtaining these search warrants was "dual" in nature, "namely the arrest of criminal suspects and the obtainment of evidence to assist in the furtherance of this ongoing investigation."  Included among these warrants was one for the search of plaintiff's apartment.  The search warrant, issued by Magistrate Judge William F. Master, directed any officer of the New York City Police department to

enter 225 Park Hill Avenue, Apartment 6G, Staten Island, New
York, within ten days from the date of issuance, and to search
for and seize the following property:

> "evidence of schemes to defraud, petit larceny, grand
> larceny, conspiracy, criminal impersonation, evidence of
> a proprietary interest in the apartments, evidence of
> obtaining and using fraudulent or stolen credit cards,
> credit card statements, stolen property, computers,
> merchandise purchased with stolen and fraudulent credit
> cards and credit card information, including electronic
> equipment, such as televisions, DVD players, gaming
> systems, DVDs, cell phones, business records, and United
> States currency."

On June 13, 2002, Detective Camello and other members of the
New York City Police Department executed these search warrants in
the apartment complex.  Officers broke open the door of
plaintiff's apartment and searched her apartment.  Upon searching
her apartment, the police discovered papers reflecting
plaintiff's bank and credit card information, three Visa Gold
Credit Cards in plaintiff's name, one Citibank Banking Card in
the name of Haja F. Kamara,[1] and one CFS Bank Visa Card in
plaintiff's name.  These credit cards were all legitimate cards,
and none were determined to have been used by plaintiff in
fraudulent transactions.  The police also discovered a Compaq
Presario 5000 computer and floppy disks.  These items were not
identified as items which had been shipped to Kamara's apartment

---

[1]Haja Kamara is plaintiff Kadi Kamara's mother.

by AOL.com or Amazon.com and were not obtained through the use of
stolen credit cards.  Nevertheless, Detective Camello seized
these items and arrested plaintiff Kamara.  Plaintiff, along with
38 other individuals, was handcuffed and transported to the 120th
police precinct for arrest processing.  The police One Line
Booking Sheet stated the same reason for all persons arrested:
"above defendant was arrested and charged from execution of a
valid Richmond County search warrant."

Plaintiff claims that while at the police station, she saw
the woman who had confronted her in December 2001, and learned
from a police officer that the woman's name was Tiffany Roberts.
It is not disputed that Tiffany Roberts was arrested on June 13,
2002, along with the 38 other individuals arrested on that day.
Plaintiff told the police at this time that Tiffany Roberts was
the woman who had confronted and threatened her in December 2001.

Plaintiff, along with all of the other individuals arrested
on that day, was charged with conspiracy in the 3rd degree and
criminal possession of stolen property in the 4th degree.
Jasmine Frilando was convicted on January 30, 2003 of conspiracy
in the 4th degree and grand larceny in the 3rd degree, both
felonies.  On April 3, 2003, Tiffany Roberts was convicted of
criminal possession of stolen property in the 4th degree,
conspiracy in the 4th degree, and grand larceny in the 4th degree,
all felonies.

The District Attorney's Office thereafter either conducted an independent investigation into plaintiff's role in the identity theft scheme, or simply reviewed the evidence it already had.  In any event, the District Attorney's Office thereafter concluded that plaintiff was a victim of the Park Hill identity theft scheme rather than a participant, and plaintiff was not prosecuted.  Nor were 24 other individuals arrested on that day.[2]

Plaintiff filed the present complaint against defendants, claiming, pursuant to 42 U.S.C. §1983, that she was falsely arrested because Detective Camello did not have probable cause to arrest her.  She also states claims for relief for conspiracy to deprive her of her constitutional rights pursuant to 42 U.S.C. §1983 and common law claims for false arrest, intentional infliction of emotional distress, and negligent hiring and supervision.  Defendants move for summary judgment dismissal on all claims.  For the following reasons, the motion for summary judgement is granted in part and denied in part.

**DISCUSSION**

<u>Jurisdiction</u>

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1343, which authorizes jurisdiction over actions arising

---

[2]Several of the others allegedly falsely arrested as part of this same operation have also filed suit in this Court, and those cases have been settled.

under 42 U.S.C. § 1983 and 28 U.S.C. § 1367, which creates
supplemental jurisdiction over claims arising under state law.

## Summary Judgment Standard

Summary judgment is appropriate "[w]hen the record taken as
a whole could not lead a rational trier of fact to find for the
non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith
Radio Corp.*, 475 U.S. 574, 587 (1986). Rule 56 of the Federal
Rules of Civil Procedure provides for summary judgment "if the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that
the moving party is entitled to judgment as matter of law." Fed.
R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S.
317, 322 (1986). "An issue of fact is genuine if the evidence is
such that a reasonable jury could return a verdict for the
nonmoving party." *Electrical Inspectors, Inc. v. Village of East
Hills*, 320 F.3d 110, 117 (2d Cir. 2003). A fact is material when
it "might affect the outcome of the suit under the governing
law." *Id.*

The party seeking summary judgment has the burden of
demonstrating that no genuine issue of material fact exists.
*Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir. 1987). If
the moving party's initial burden is met, the burden shifts to
the non-movant to "set forth specific facts showing that there is

a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also*
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Brady*
*v. Town of Colchester,* 863 F.2d 205, 210-11 (2d Cir.1988). The
trial court's function in deciding such a motion is not to weigh
the evidence or resolve issues of fact, but to decide instead
whether, after resolving all ambiguities and drawing all
inferences in favor of the non-moving party, there is a genuine
issue for trial. *Anderson*, 477 U.S. at 249 (1986); *Pinto v.*
*Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

<u>Section 1983 Claims</u>

Section 1983 claims have two principal elements: (1) the
defendant acted under the color of state law, and (2) as a result
of defendant's actions, plaintiff was deprived of a right secured
by the Constitution and laws of the United States. *See e.g.*
*Mahoney v. National Organization of Women,* 681 F.Supp.129, 132
(D.Conn. 1987); *Lehman v. Kornblau,* 134 F.Supp. 2d 281, 287
(E.D.N.Y. 2001), *citing Annis v. County of Westchester*, 136 F.3d
239, 245 (2d Cir. 1998); *Eagleston v. Guido*, 41 F.3d 865, 872 (2d
Cir.1994).

Here, the first element is undisputed, because the actions
giving rise to plaintiff's claims were committed by Detective
Camello in the course of his work as a law enforcement officer.
*See Daniels v. Williams,* 474 U.S. 327 (1986). The following

discussion focuses on the second element.

False Arrest

Plaintiff asserts a claim of false arrest under §1983 as well as a state law claim of false arrest. A false arrest claim rests on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996). A claim for false arrest under 42 U.S.C. § 1983 is substantially the same as a claim for false arrest under New York law. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996).

A damages claim for false arrest cannot be sustained if there was probable cause for the arrest. *See e.g., Singer v. Fulton County Sheriff*, 63 F.3d 110, 118-19 (2d Cir.1995); *Bernard v. United States*, 23 F.3d 98, 102 (2d Cir.1994). The existence of probable cause is a complete defense to a false arrest claim, even where the plaintiff was ultimately acquitted of the criminal charges. *See Weyant*, 101 F.3d at 852 (citing *Bernard v. United States,* 25 F.3d 98,102 (2d Cir.1994).

"Probable cause exists where 'the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175-176 (1949) (*quoting Carroll v. United*

*States*, 267 U.S. 132, 162 (1925)). "If the determination of whether an arresting officer had probable cause requires the resolution of disputed facts, the existence of probable cause is to be decided by a jury." *Campbell v. Giuliani*, 2001 WL 91615, 3 (E.D.N.Y. 2001) (*citing Murphy v. Lynn*, 118 F .3d 938, 947 (2d Cir.1997), *cert. denied*, 522 U.S. 1115 (1998)). Probable cause is presumed when the arrest is effected pursuant to an arrest warrant issued by a neutral magistrate. *Golino v. City of New Haven*, 950 F.2d 864, 970 (2d Cir.1991); *Lehman v. Kornblau*, 134 F.Supp.2d 281 (E.D.N.Y. 2001).

In the present case, defendants argue that the claim for false arrest must be dismissed because Detective Camello had probable cause to arrest plaintiff Kamara. Relying on *Golino*, they argue that "the issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause." 950 F.2d at 870. This argument fails, however, because although a valid warrant existed in the present case, the warrant was a *search* warrant, not an *arrest* warrant as was the case in *Golino*. The search warrant issued as to plaintiff's apartment was therefore not based upon a finding that probable cause existed to arrest her. Accordingly, there is no presumption that it was objectively reasonable for Detective Camello to arrest plaintiff Kamara based

on the search warrant.

Neither has defendant established that the evidence gathered during the search gave rise to probable cause. During the search, the police found only legitimately obtained and possessed credit cards, computer, and floppy disks. Indeed, Detective Camello conceded during his deposition that plaintiff Kamara's "arrest wasn't based upon evidence found in the apartment." Defendants, however, have failed to provide sufficient evidence that probable cause to arrest plaintiff existed prior to execution of the search warrant. Detective Camello claims that he was relying on information from a confidential informant and from information obtained from UPS, AOL.com, and Amazon.com; however, defendants have failed to provide evidence sufficient to establish as a matter of law the nature, timing and reliability of the information said to have been relied upon. Because defendants have not established that they are entitled to judgment as a matter of law, summary judgment on the false arrest claims is denied.

## Qualified Immunity

Even if a court finds that an arrest was unlawful, the Court should grant summary judgment, if it finds that, when viewing the facts in the light most favorable to the plaintiff, the defendant officer is entitled to qualified immunity for his conduct. *See Saucier v. Katz*, 533 U.S. 194 (2001); *see also Hamilton v. City*

*of New Haven,* 214 F.Supp.2d 125, 131 (D.Conn. 2002). The
qualified immunity doctrine shields "government officials
performing discretionary functions...from liability for civil
damages insofar as their conduct does not violate clearly
established statutory or constitutional rights of which a
reasonable person would have known." *Harlow v. Fitzgerald,* 457
U.S. 800, 818 (1982); *X-Men Security, Inc. V. Pataki,* 196 F.3d
56, 65-65 (2d Cir.1999).

The question of qualified immunity is independent from the
merits of the underlying action and must be examined
independently of the underlying claims. *See Saucier* 533 U.S. at
207 (2001); *Washington Square Post No. 1212 v. Maduro*, 907 F.2d
1288, 1292 (2d Cir.1990)(*citing Mitchell v. Forsyth,* 472 U.S.
511, 527-28). Moreover, because "the entitlement is an *immunity
from suit* rather than a mere defense to liability," *Mitchell*, 472
at 526, the Supreme Court has "repeatedly stressed the importance
of resolving immunity questions at the earliest possible stage in
litigation." *Saucier,* 533 U.S. at 201 (noting that "to deny
summary judgment any time a material issue of fact remains [on
the underlying constitutional claim] could undermine the goal of
qualified immunity...to permit the resolution of many
insubstantial claims on summary judgment"); *see also Hunter,* 502
U.S. at 227 (1991).

In assessing whether an officer is entitled to qualified

immunity, the court must first consider the question of whether
"[t]aken in the light most favorable to the party asserting the
injury...the facts alleged show the officer's conduct violated a
constitutional right." *Saucier,* 533 U.S. at 201. The "next
sequential step is to ask whether the right was clearly
established." *Id.* The right "must be defined at the appropriate
level of specificity before a court can determine if it was
reasonably established." *Id.* (citing *Anderson v. Creighton*, 483
U.S. 635, 641 (1987)). Finally, "even where the law and the
scope of permissible official conduct are clearly established,
the defense of qualified immunity will protect a government
official if it was 'objectively reasonable' for him to believe
his acts were lawful." *Cartier v. Lussier*, 955 F.2d 841, 844 (2d
Cir.1992). The objective reasonableness test is met, and the
officer is entitled to qualified immunity, if "reasonably
competent officials could disagree" as to whether the conduct at
issue would violate clearly established rights. *Malley v.
Briggs*, 475 U.S. 335, 341 (1986); *Cartier*, 955 F.2d at 46 (2d
Cir.1992); *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995).

It is not disputed that it was clearly established at the
time of the incident that individuals have a Fourth Amendment
right to be free from unreasonable seizures, including arrest
without probable cause. *Weyant v. Okst*, 101 F.3d 845, 852 (2d
Cir.1996). There is also no dispute that this right was at that

time defined at the appropriate level of specificity.  Thus, the
relevant question is "whether a reasonable officer could have
believed" the arrest "to be lawful, in light of the established
law and the information the officers possessed." *Hunter,* 502
U.S. at 227; *Anderson,* 483 U.S. at 641.

In claiming that defendant Detective Camello is entitled to
qualified immunity, defendants again argue that "police activity
conducted pursuant to a warrant rarely will require any deep
inquiry into reasonableness because a warrant issued by a
magistrate normally suffices to establish that a law enforcement
officer has acted in good faith." *Simms v. Village of Albion*,
115 F.3d 1098, 1106 (2d Cir. 1997) (*citing United States v. Leon*,
468 U.S. 897, 992 (1984)).  Defendants erroneously apply the
holdings in the cases they have cited to the present case.  The
"police activity" at issue in this case is the arrest of
plaintiff Kamara, *not* the search of her apartment, which was
conducted pursuant to the search warrant.  Plaintiff Kamara's
arrest, on the other hand, was not conducted pursuant to any
arrest warrant.

The question thus becomes whether Detective Camello had
sufficient evidence to arrest plaintiff Kamara such that "a
reasonable officer could have believed" the arrest "to be
lawful."  Because, as stated above, the amount, nature, and
reliability of the evidence Detective Camello had supporting his

arrest of plaintiff Camello have not been established and present issues of fact to be decided by a jury, summary judgement based on the defense of qualified immunity must also be denied.

<u>Conspiracy Claim</u>

To establish a conspiracy under § 1983, a plaintiff must show: (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-325 (2d Cir. 2002); *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). The plaintiff must demonstrate that the defendant "acted in a willful manner, culminating in an agreement, understanding or 'meeting of the minds,'" that violated the plaintiff's constitutional rights. *Duff v. Coughlin*, 794 F.Supp. 521, 525 (S.D.N.Y. 1992) (*quoting Katz v. Morgenthau*, 709 F.Supp. 1219, 1231 (S.D.N.Y.), aff'd in part, rev'd in part, 892 F.2d 20 (1989)); *see also Malsh v. Austin*, 901 F.Supp. 757, 763 (S.D.N.Y. 1995).

Plaintiff asserts that Detective Camello conspired with other members of the Staten Island Gang Division and his commander to arrest plaintiff. However, "[w]here the individual defendants are all employees of the institutional defendant, a claim of conspiracy will not stand." *Nat'l Congress for Puerto Rican Rights v. City of New York*, 75 F. Supp. 2d 154, 168-69

(S.D.N.Y.1999) (dismissing conspiracy claim because all alleged co-conspirators were employees of the New York City Police Department) (*quoting Burrell v. City University of New York*, 995 F.Supp. 398, 414 (S.D.N.Y. 1998)); *Everston v. State of New York Mortgage Agency*, 89 Civ. 7474, 1992 WL 6190, at 6 (S.D.N.Y. 1992) (conspiracy claim failed as a matter of law where all of the individual defendants were employees of SONYMA at the time of the alleged conspiracy); *Capital Imaging Assocs., P.C. v. Mohawk Valley Medical Assocs.*, Inc., 996 F.2d 537, 542 (2d Cir. 1993) (unilateral conduct on the part of a single enterprise falls outside the purview of § 1 of the Sherman Act, prohibiting conspiracies in restraint of trade); *Ritzie v. City University of New York*, 703 F.Supp. 271, 277 (S.D.N.Y. 1989) (conspiracy requires participation by an external party).

Because Detective Camello and the others with whom plaintiff alleges defendant conspired are all employees of the New York City Police Department, this claim must be dismissed. Accordingly, defendant's motion for summary judgment as to plaintiff's conspiracy claim is granted.

<u>Plaintiff's Remaining Claims</u>

Plaintiff Kamara concedes dismissal of her state law claim of negligent hiring and supervision against defendant City as well as her state law claim of intentional infliction of emotional distress against Detective Camello. Plaintiff Kamara

also concedes that there is no evidence to support municipal liability under 42 U.S.C. § 1983.  Accordingly, these claims must be dismissed.  Because no claim for relief remains against defendant City, the complaint as to defendant City of New York must be dismissed in its entirety.

## CONCLUSION

For the aforementioned reasons, the motion for summary judgment is granted in part and denied in part, and the complaint as to defendant City of New York is dismissed in its entirety.

The Clerk is directed to furnish a filed copy of the within to all parties and to the magistrate judge.

SO ORDERED.

Dated :   Brooklyn, New York
          November 21, 2005


                    By: /s/ Charles P. Sifton (electronically signed)
                        United States District Judge